Good morning. May it please the Court, I am Maureen Leavitt, appearing on behalf of the petitioner... Can we get you to speak up? Yes. I am Maureen Leavitt, appearing on behalf of the petitioner, Ms. Leonarda Isla. There are two issues that I'd like to discuss today. The first one is the advance parole and the notice requirement, and the second one is the applicability of the 212K waiver. Under the advance parole... District Courts? Does it amplify? Okay. Then you'll need to speak up a little bit. Okay. I'll do my best. Under the advance parole and notice requirement, the question is not whether the government can place an individual who leaves and reenters in exclusion proceedings, but when the government shouldn't be allowed to do this and strip the alien of significant, substantial, and procedural rights without the proper notice. This case is controlled by Navarro-Aspura because the notice didn't inform the petitioner that she'll lose her right to a deportation hearing. In other words, the potential relief was at stake, and she didn't receive the proper notice. She's a 56-year-old woman who left on advance parole while her asylum application was pending. The warning on the form that she signed said that if her request for asylum is denied, she would be subject to exclusion proceedings. She was paroled in for asylum proceedings, but the parole also was valid only until July 1st of 97, which is ambiguous in itself because when is it valid until? Until the expiration date or until the asylum proceedings are complete? After the expiration date, she withdraws for the first time her asylum application, and the government places her in removal proceedings and charges her as being deportable. I suspect when the government gets up, they're going to say this case is less like Navarro and more like Barney. What's your response? I don't think the case is at all like Barney. Barney was a case where the person traveled on advance parole while the adjustment application was pending, and there's specific regulations in the Act that say if you do that, you can come back in for the adjustment, but if the adjustment is denied, you'll be in exclusion proceedings. Navarro involved a situation where what happened was a proceeding other than what was identified in the notice. Is that right? Correct. Navarro was a registry applicant, and the notice discussed adjustment of status. Does this case rise or fall on the difference between denied and withdrawn? Yes, I think so, because … And your argument is that withdrawn is significantly different than denied? Yes, I think so. Tell us why you think that. I think the notice in this case is even more flawed than the one in Navarro, because what she was essentially told on the notice is if you fail to prove your case in asylum, your asylum case, then you'll be placed in exclusion proceedings, or if the government makes a negative determination in your case, then you'll be subject to exclusion proceedings. She wasn't told anything about the fact what would happen if she withdraws the asylum relief and applies for a different type of relief. And, in fact, as I said before, the regulations say that if you enter on advanced parole, you may apply for adjustment of status, and then if it's denied, you will be placed in exclusion proceedings. Wasn't the fair import of the – and tell me if this statement is wrong. It's not meant to be argumentative. Wasn't the fair import of the notice to her that if she failed to achieve an adjustment of status, she could be returned, revoked, excluded? If she failed to achieve adjustment? Yes, if she didn't win. Well, the other – If she went to a hearing and lost, went to a hearing and had some kind of adverse determination, in other words, she didn't succeed on her application. Right, which is not what happened. That was the fair – would you say that was the fair import of the notice? Right, which is not what happened. How can she achieve the opposite of denied, which is a grant, with a withdrawn petition? Because she withdraws one petition and submits another.  I can submit an adjustment of status application, and then if that's denied, I'll be placed in exclusion. But she's never told that if she withdraws the asylum application, she'll never have any right to any other relief. I think we understand your argument. Why don't we hear from the government? You've got about five and a half minutes left, and you can respond to what your opponent argues. Thank you for your argument. I appreciate it. Counsel? Good morning, Your Honors. I'm Carol Federighi on behalf of Respondent Attorney General Gonzalez in this matter. The issue in this case is whether – Is that the first time you've been able to say that? No, I said it yesterday. Also, I had an argument. Okay. So it's getting more accustomed to it now. I like to have an attorney general who can pronounce the names of the petitioners. Yes, yes. Well, hopefully. Still, the attorneys might struggle. Whether an attorney – the issue in this case is whether an alien who voluntarily left the United States and was permitted reentry pursuant to a prior agreement only to pursue an asylum application is now entitled to seek an entirely different form of relief, a form of relief for which she was not yet eligible in any event at the time she was seeking it. The answer to this question is no. When her asylum application was no longer viable, she withdrew it. She became an inadmissible alien. Inadmissible aliens are entitled to only certain limited forms of relief under the Act, and they are not entitled to apply for adjustment of status. In order to do that, she needed a waiver under the Act, and that's where Section 2112K comes in. That's what she sought a waiver under that particular section. This section applies, though, only in cases where an immigrant comes to the United States with an immigrant visa in her hand, thinking that she has a valid immigrant visa, and it later turns out that that immigrant visa is invalid for some reason. For example, say her sponsoring relative died and she was not aware of that fact. That's usually the case. These are rare cases, but that's the kind of situation you usually see. This is not that situation. She did not have an immigrant visa when she came back to the United States. She did not have an immigrant visa when she applied for adjustment of status before the immigration judge. How is she different than the petitioner in Navarro? In Navarro, that's the registry case. Is that correct? Yes. In that case, the person left under advance parole, and the advance parole notice said that if they returned, they could pursue adjustment of status, and if that was denied, then they would be placed in exclusion proceedings. But the applicant in that case was seeking registry, a totally different form of relief, and so the court held that the notice wasn't sufficient to warn that person of the consequences. In this case, the notice said that if her asylum application was denied, she would be placed in exclusion proceedings. And her argument is it didn't tell me, the recipient of the notice, that if I withdrew the application and pursued a different form of relief, that I was subject to exclusion. Right. She's arguing that deny does not encompass withdraw. They are two different concepts, aren't they? They are two different concepts. At the time that she sought advance parole, and at the time that she withdrew her asylum application, she was represented by counsel at both those times. There's nothing in immigration law anywhere that petitioners pointed to that could suggest that her lawyers thought that somehow withdrawal would give her different rights than having the application denied. In any event, I just want to point out for your honors, as sort of a side note, the advance parole notice also said that if she went back to the country that she was seeking asylum from, the advance parole or the... She went back to her father, who was dying. Right, in the Philippines. Why punish her for that? Why give her a different status than when she was here under the work permit? Because the way advance parole works is it's a privilege. We're giving the alien who's here out of status the privilege. Years ago, the common law became so harsh and so unfair that it was almost abolished until somebody figured out equity. And equity saved common law. And why, you know, these immigration cases may have reached that status. Well, your honor... I understand the person who is in this country with a valid work permit, a good, decent person, her father is sick in the Philippines and she goes back, as any human being would do, to visit her father. Now to come back, she had to get another permit from the government. Now you want to kick her back to the Philippines. Well, she did not have a valid work permit when she left. She was out of status when she left. What's wrong with letting her stay here? What harm is there to anybody that she not be allowed to stay in this country? Again, she got the privilege of voluntary departure while she was... Excuse me, I used the wrong word. She got the privilege of being allowed to leave the country while she was out of status, and we said you can come back in to continue to pursue your asylum application. It was a privilege. Normally, if an out-of-status alien leaves, they're not allowed to back in until they get another visa. She goes back to visit her father and she has to start all over again. Exactly. Well, she could come back... She didn't have those privileges at all. She can come back to pursue her asylum application. Those were the conditions under which we did allow her to depart with this privilege of advanced parole. Since she came back, she pursued a different sort of relief now, and I want to get to that, the adjustment of status relief. That is a form of relief. Basically, she was getting it through in the employment process, where her employer submitted a visa petition called an I-140 on her behalf. That was approved in 2000. I think that was late. Yeah, in February of 2000, that was approved. That does not give her an immigrant visa, even if you're going to call what she gets in the U.S. an immigrant visa. That's only a visa petition approval. That means she's eligible to apply for adjustment of status or an immigrant visa if one is available. At the time, and this is on page 149 of the record, this is the approval notice for the I-140 application. At the time that her I-140 application was approved, the priority date, that's the date of the applications that they were considering for immigrant visas, was August 14, 1995. That means only people who trialed their I-140 petitions before or on that date were being considered for immigrant visas. Her priority date was March 15 of 1999. She was there for three and a half years, approximately away from even being able to get an immigrant visa or adjustment of status, whatever you want to call it. So the immigration judge could have denied her application on that basis alone, without even getting into whether she was eligible for a 2-1-12-K waiver. But if you're going to apply the 2-1-12-K waiver, whether you consider her to be getting an immigrant visa or not when she's in the country, and the government's argument was she's not even getting an immigrant visa because she's in the country, and 2-1-12-K doesn't apply. But even if you buy her argument that she can get an immigrant visa while she's in the country, she was not going to be able to get one for probably three years or so. So she wasn't even eligible for the waiver under her own theory because she did not have the 2-1-12-K. I mean, she did not have an immigrant visa. What's the length of her stay? I don't know. If the I-141, is that the right number? The I-140. The I-140 were granted. Is there a length? No, that would give them a green card, essentially, once they got that. She'd become an LPR. Yes, yes. There's no limit to her stay. As far as I know. Stay forever. As far as I know, yes. She could have done that except she visited her dying father. Well, again, or she could have stayed over there and pursued it from abroad, but she still would not have been eligible for it in 2000 because of the length the process takes. If at the time that she, in fact, withdrew, if she had instead asked to convert the proceeding, is that possible? Would that have been possible? No, that's not possible. As an inadmissible alien, she was not eligible to pursue adjustment of status. And in fact, the judge made it clear when she withdrew her application that she could pursue, you know, that she could continue to pursue that while she was trying to seek other forms of relief and encouraged her not to withdraw it unless she really did not think she was eligible for asylum. Was she proceeding to revoke her work permit? She never did have a work permit, Your Honor. And I just want to, on the equities. She didn't have a work permit when she came to this country? No, she did not. She came as a visitor, only authorized to stay for three months. And she did get a job, but her employer kept pushing her to actually become legal so they could, you know, really put it on the books. So she was really working illegally. As far as that, did you have a question, Your Honor? I've got a question. Had she not gone back to visit her father and stayed in the United States, would she have been eligible for adjustment of status under the work permit? Yes, she could have sought adjustment of status. So it's the fact that she had gone back and gotten this advance parole that disqualifies her? Yes, from pursuing it while she's in the country. She, as far as equities go, I just want to make it clear that she could have pursued this work permit, the green card, from outside the country. And that's what most immigrants are required to do. And we're only asking that she do what everyone else would be required to do, pursue it through the- Well, but she was in the country. Right. That's one exception that has been allowed to address some of the equities. But, again, she had started the process, the record shows, in 1995, I just want to sum up, for this work permit. As of 2000, she still was years away from actually getting the, call it a work permit, or the immigrant visa. So she wasn't even eligible. Even if she hadn't left the country and come back, she wouldn't have been eligible for adjustment of status. I think we understand your argument. Counsel, thank you for your argument here today. Thank you. Just a couple of things in response to what the government has argued. With regard to the work permit, I would check the record, but I believe that when a person applies for asylum, they are given a work permit for as long as the asylum proceedings take, similarly with an adjustment of status. When they apply for adjustment of status, they do get a work permit. And the other argument that counsel made was that she should pursue the relief outside the country, as everyone else had. But the point is that she was here, and she was given the opportunity to leave and return without the notice, that she would be forfeiting all of these rights that she had originally. And that's the point. That's where she's different from everyone else outside the country. Thank you for your argument. Thank both counsel for their argument. The case just argued will be submitted. And are counsel present on Bona? Yes, Your Honor. Come on up.
judges: Hug, Ferguson, Hawkins